UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BROADCAST MUSIC, INC., et al.,<br><br>　　　　　　　Plaintiffs,<br>　v.<br><br>QM ENTERTAINMENT, LLC d/b/a QUARTER MILE BAR & GRILL, and LESTER TRUMMERT,<br><br>　　　　　　　Defendants. | CASE NO. 3:24-cv-05981-TL<br><br>ORDER ON MOTION FOR DEFAULT JUDGMENT |

This matter is before the Court on Plaintiffs' Motion for Default Judgment. Dkt. No. 14. Defendants have not appeared or otherwise participated in this case; the Clerk of Court entered Defendants into default on March 17, 2025. Dkt. No. 12. Having reviewed the relevant record, the Court DENIES Plaintiffs' motion.

## I.　PROCEDURAL BACKGROUND

This is a copyright-infringement case predicated upon the unauthorized public performance of some 11 copyrighted songs at Defendants' restaurant/bar. *See generally* Dkt. No. 1 (complaint). On November 26, 2024, Plaintiffs filed the operative complaint. *Id.* On

February 9, 2025, Plaintiffs served process on both Defendants. *See* Dkt. No. 10 (Smith Decl.) at 4, 6. Defendants neither appeared nor responded to Plaintiffs' complaint, and on March 11, 2025, Plaintiffs moved for an entry of default against both Defendants. Dkt. No. 11. On March 17, 2025, the Court granted Plaintiffs' motion and entered Defendants into default (Dkt. No. 12) and gave Plaintiffs until June 16, 2025, to move for default judgment (Dkt. No. 13). On April 9, 2025, Plaintiffs filed the instant motion for default judgment. Dkt. No. 14.

## II. FACTUAL BACKGROUND

### A. The Parties

The lead Plaintiff is Broadcast Music, Inc. ("BMI"), a Delaware corporation with its principal place of business in New York. *Id.* ¶ 3. Under the Copyright Act of 1976, BMI is a "performing rights society" that has been "granted the right to license the public performance rights in 22.4 million copyrighted musical compositions . . . ." 17 U.S.C. § 101; Dkt. No. 1 ¶ 3. "The Plaintiffs other than BMI are the owners of the copyrights in the musical compositions, which are the subject of this lawsuit," including Cotillion Music, Inc.; Warner-Tamerlane Publishing Corp.; Alley Music Corp.; Trio Music Company; Stone Diamond Music Corp.; Screen Gems-EMI Music, Inc.; EMI Al Gallico Music Corp.; Unichappell Music Inc.; EMI Blackwood Music Inc.; Sprit Music Group Inc.; Sony/ATV Songs LLC; Sea Gayle Music LLC; Mary Bono; Showbilly Music; Lucky Thumb Music; Noah's Little Boat Music; Eldorotto Music Publishing; and Big Gassed Hitties. Dkt. No. 1 ¶¶ 4, 5–22.

There are two Defendants in this case. Defendant QM Entertainment, LLC, is a Washington limited liability company that "operates, maintains and controls an establishment known as Quarter Mile Bar & Grill [in] Yelm, Washington." *Id.* ¶ 23. Defendant Lester Trummert "is an officer of Defendant QM Entertainment, LLC with responsibility for the operation and management of that limited liability company and [Quarter Mile Bar & Grill]."

1    *Id.* ¶ 26. Defendant Trummert "has the right and ability to supervise the activities of Defendant

2    QM Entertainment, LLC and a direct financial interest in that LLC and [Quarter Mile Bar &

3    Grill]." *Id.* ¶ 27.

4    **B.    The Infringement**

5    　　Copyright owners, such as the non-BMI Plaintiffs here, maintain the "exclusive right[]"

6    to authorize public performance of their copyrighted work. 17 U.S.C. § 106(6). As a "performing

7    rights society," Plaintiff BMI facilitates such authorization by "licens[ing] the music of its

8    members"—i.e., the copyright owners—"and collect[ing] royalties whenever that music is

9    performed publicly." *Range Road Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1151 (9th

10   Cir. 2012) (citing *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 4–5 (1979)). The

11   22.4 million songs for which copyright owners have granted BMI the right to license public

12   performance rights make up the "BMI Repertoire." Dkt. No. 1 ¶ 3.

13   　　"BMI routinely sends license agreements to the proprietors of establishments where

14   music is publicly performed, and information explaining the need to obtain permission from

15   copyright owners in order to lawfully publicly perform copyrighted music in their

16   establishment." Dkt. No. 16-3 (Flynn Decl.) ¶ 2. Here, Plaintiffs allege that Defendants willfully

17   committed copyright infringement by allowing the unauthorized public performance of musical

18   compositions from the BMI Repertoire. Dkt. No. 1 ¶ 30.

19   　　Beginning in March 2023, Plaintiff BMI contacted Defendants "over forty (40) times" to

20   "educate Defendants as to their obligations under the Copyright Act with respect to the necessity

21   of purchasing a license for the public performance of musical compositions in the BMI

22   Repertoire." Dkt. No. 1 ¶ 29; *see* Dkt. No. 16-3 at 55–119 (written correspondence between

23   Plaintiff BMI and Defendants). Plaintiff BMI sent Defendants "Cease and Desist Notices,"

24

which provided Defendants with "formal notice that they must immediately cease all use of BMI-licensed music in" Quarter Mile Bar & Grill. Dkt. No. 1 ¶ 29.

Defendants did not cease and desist. On May 28, 2024, Defendants publicly performed at least 11 songs from the BMI Repertoire without having obtained permission to do so. Dkt. No. 1 ¶ 30; *see* Dkt. No. 1-1 (Schedule). These songs included:

- "Beat Goes On a/k/a The Beat Goes On," published by Plaintiff Cotillion Music, Inc., and Plaintiff Mary Bono as Trustee of the Bono Collection Trust;

- "China Grove," published by Plaintiff Warner-Tamerlane Publishing Corp.;

- "Hanky Panky," published by Plaintiff Alley Music Corp. and Plaintiff Trio Music Company;

- "Hello Walls," published by Plaintiff Sony/ATV Songs LLC;

- "I Heard It Through the Grapevine a/k/a Heard It Through the Grapevine," published by Plaintiff Stone Diamond Music Corp.;

- "I'm Your Puppet," published by Plaintiff Screen Gems-EMI Music, Inc.;

- "Neon Moon," published by Plaintiff Showbilly Music;

- "Stand By Your Man," published by Plaintiff EMI Al Gallico Music Corp.;

- "Teenager In Love a/k/a A Teenager in Love," published by Plaintiff Unichappell Music, Inc.;

- "Mama Told Me Not to Come," published by Plaintiff Unichappell Music Inc.; and

- "In Color," published by Plaintiff EMI Blackwood Music Inc., Plaintiff Warner-Tamerlane Publishing Corp., Plaintiff Lucky Thumb Music, Plaintiff Noah's Little Boat Music, Plaintiff Sea Gayle Music LLC, Plaintiff Eldorotto Music Publishing, Plaintiff Big Gassed Hitties, and Plaintiff Spirit Music Group Inc.

Dkt. No. 1-1 at 1–5. The copyright owners of all 11 songs "complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights Certificates of

Registration bearing" registration numbers. Dkt. No. 1 ¶ 33. Plaintiff BMI is the licensor of public performance rights for all 11 songs. *Id.* ¶ 34.

### III. LEGAL STANDARD

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When considering whether to exercise discretion in entering default judgments, courts consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of a plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 884 (S.D. Cal. 2021); *e.g.*, *Bd. of Trs. of San Mateo Hotel Emps. & Rest. Emps. Welfare Fund v. H. Young Enters., Inc.*, No. C08-2619, 2009 WL 1033665, at *4–5 (N.D. Cal. Apr. 13, 2009) (finding second and third *Eitel* factors dispositive when deciding to enter default judgment).

Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except those regarding facts related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting

1 *Cripps*, 980 F.2d at 1267). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

## IV.   DISCUSSION

### A.   Jurisdiction

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

#### 1.   Subject-Matter Jurisdiction

The Court has federal-question subject-matter jurisdiction over this matter based on Plaintiffs' claims for copyright infringement. 17 U.S.C. § 501; 28 U.S.C. §§ 1331, 1338.

#### 2.   Personal Jurisdiction

The Court may properly exercise general personal jurisdiction over Defendant QM Entertainment but not over Defendant Trummert. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up). Defendant QM Entertainment is a Washington LLC that maintains the establishment Quarter Mile Bar & Grill in Yelm, Washington. Dkt. No. 1 ¶ 23. Defendant QM Entertainment's incorporation as a Washington LLC, along with its operation of a restaurant in Washington, clearly establishes this Court's general personal jurisdiction over it. *See Hein v. Taco Bell, Inc.*, 60 Wn. App. 325, 330–31, 803 P.2d 329 (1991).

As to Defendant Trummert, however, Plaintiffs have not pleaded sufficient facts to invoke the Court's jurisdiction over him. Plaintiffs do not assert that Defendant Trummert is a citizen or resident of Washington, and Plaintiffs' assertions about what contacts Defendant Trummert might have with Washington are exceedingly vague, consisting of only two sentences.

ORDER ON MOTION FOR DEFAULT JUDGMENT - 6

First, they assert that he "is an officer of Defendant QM Entertainment, LLC with responsibility for the operation and management of that limited liability company and [Quarter Mile Bar & Grill]." Dkt. No. 1 ¶ 26. Second, Plaintiffs assert that Defendant Trummert "has the right and ability to supervise the activities of Defendant QM Entertainment, LLC and a direct financial interest in that LLC and [Quarter Mile Bar & Grill]." *Id.* ¶ 27.

These facts are not sufficient. Officers of a corporation are protected from a court's exercise of personal jurisdiction over them that is based solely on their employment status. *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1119–20 (C.D. Cal. 2009). Therefore, Plaintiffs have not established that Defendant Trummert, merely by virtue of his position as an officer of the company, maintains "continuous and systematic general business contacts" with Washington. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984). He is thus not subject to the Court's exercise of general personal jurisdiction over him. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004) (distinguishing between general and specific personal jurisdiction).

For the Court to exercise *specific* personal jurisdiction over Defendant Trummert, then, he must have been, at the very least, "actively and personally involved in the conduct giving rise to the claim." *Allstar Mktg. Grp.*, 666 F. Supp. 2d at 1121 (quoting *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d F.3d 683, 697–98 (6th Cir. 2000)) (Lanham Act claim). "Personal" involvement is crucial: a corporation's actions cannot be attributed to a corporate officer or employee for purposes of establishing jurisdiction over that officer or employee. *See Failla v. FixtureOne Corp.*, 181 Wn.2d 642, 651, 336 P.3d 1112 (2014), *as amended* (Nov. 25, 2024). This case is specifically about the unauthorized public performance of 11 songs on May 28, 2024. *See* Dkt. No. 1-1 at 1–5. However, the Complaint is silent with respect to Defendant Trummert's participation in that public performance on that date. The allegation in the

Complaint asserts only that the claims of copyright infringement are "based upon Defendant's [*sic*] unauthorized public performance of musical compositions form the BMI Repertoire." Dkt. No. 1 ¶ 30. *Which* Defendant is not specified, and Defendant Trummert's personal involvement is therefore unasserted. As pleaded, then, the Court cannot exercise personal jurisdiction over Defendant Trummert, and default judgment against him is inappropriate on that basis. *See Tuli*, 172 F.3d at 712 ("[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction.").

B. **Default Judgment**

The Court finds that the second and third *Eitel* factors weigh against an entry of default judgment; accordingly, Plaintiffs' motion cannot succeed. *See Amazon.com Inc. v. Tang*, No. C23-898, 2024 WL 3521528, at *2 (W.D. Wash. July 24, 2024) ("Failure to establish the second and third [*Eitel*] factors is dispositive and requires denial of the motion."); *United States ex rel. Lesnik v. Eisenmann SE*, No. C16-1120, 2021 WL 4243399, at *11 (N.D. Cal. Sept. 17, 2021) (noting that "failure to satisfy the second and third *Eitel* factors is sufficient to deny a motion for default judgment").

The second and third *Eitel* factors examine the merits of Plaintiffs' substantive claims and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471. In evaluating the merits of the claim, the Court employs the *Iqbal–Twombly* standard whereby a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *GS Holistic, LLC v. The City Smoke Corp.*, No. C24-1286, 2025 WL 1345083 at *2 (W.D. Wash. May 8, 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up)); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Taking the allegations in Plaintiffs' Complaint as true, Plaintiffs have not successfully pleaded a potentially meritorious claim for copyright infringement. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2020)

(explaining how the Ninth Circuit has suggested that the second and third *Eitel* factors require plaintiffs to state a claim on which they can recover); *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) ("The issue here is whether the allegations in the complaint are sufficient to state a claim on which [plaintiff] may recover.").

To establish a prima facie case for copyright infringement, a plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Range Road Music*, 668 F.3d at 1153–54 (quoting *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006)). "The word 'copying' is shorthand for the infringing of any of the copyright owner's exclusive rights, one of which is the right to perform the copyrighted work publicly." *Id.*; *see* 17 U.S.C. § 106(6).

Plaintiffs have established the first element. Plaintiffs allege that the "Plaintiffs other than BMI are the owners of the copyrights in the musical compositions, which are the subject of this lawsuit." Dkt. No. 1 ¶ 4. Plaintiffs allege further that "BMI has been granted the right to license the public performance rights in 22.4 million copyrighted musical compositions . . . , including those which are alleged herein to have been infringed." *Id.* ¶ 3. The Schedule attached to the Complaint provides further information concerning each claim of infringement. *See* Dkt. No. 1-1. Line 4 of each entry in the Schedule lists the copyright owner. *See id.* Each allegedly infringed song is owned by at least one Plaintiff. *See supra* Section II.B. The Schedule also lists the songs' respective copyright registration numbers and dates of registration. *See* Dkt. No. 1-1.

But as to the second element, the Complaint does not allege "copying"—i.e., the unauthorized public performance—of the songs beyond a conclusory restatement of the cause of action. *See* Dkt. No. 1 ¶ 31; Dkt. No. 1-1. Plaintiffs' pleading merely alleges that "Defendants publicly performed and/or caused to be publicly performed" the 11 songs at issue in the complaint. Dkt. No. 1 ¶ 35. But to claim only that the songs were "publicly performed" "merely

1    track[s] the language of § 106 and [is,] thus, conclusory." *YellowCake, Inc. v. DashGo, Inc.*,

2    No. C21-803, 2022 WL 172934, at *7 (E.D. Cal. Jan. 19, 2022) (granting defendant's motion to

3    dismiss under Rule 12(b)(6)); *see* 17 U.S.C. § 106(6) (owner of a copyright has exclusive rights,

4    "in the case of sound recordings, to perform the copyrighted work publicly by means of a digital

5    audio transmission"). While extensive examples or detailed allegations are not necessary,

6    *YellowCake, Inc.*, 2022 WL 172934, at *7, "a formulaic recitation of the elements of a cause of

7    action will not do." *Iqbal*, 556 U.S. at 678.

8         Although the exhibits attached to Plaintiffs' motion substantiate the allegations in the

9    Complaint, they are not properly considered part of the pleading. Plaintiffs "cannot cure factual

10   deficiencies in the complaint by alleging or even attempting to prove additional facts in [their]

11   motion for default judgment . . . ." *Fed. Deposit Ins. Corp. v. RPM Mortg., Inc.*, No. C15-5534,

12   2018 WL 1335812, at *5 (N.D. Cal. Mar. 15, 2018) (citing *Alan Neuman Prods., Inc. v. Albright*,

13   862 F.2d 1388, 1393 (9th Cir. 1988)). Plaintiffs' exhibits demonstrate that they had the necessary

14   information at the time they filed their Complaint, but they apparently chose not to include it in

15   the pleading.

16        Further, Plaintiffs' complaint is deficient in that its allegations represent an "everyone did

17   everything" complaint. *See Watt v. HAL Antillen N.V.*, No. C24-155, 2024 WL 4436966, at *2

18   W.D. Wash. Oct. 7, 2024). A complaint "must provide specific factual detail regarding each

19   Defendant's acts and omissions that allegedly violated Plaintiff[s'] rights." *Garcia v. Diaz*, No.

20   C20-2564, 2021 WL 719820, at *2 (C.D. Cal. Feb. 24, 2021). Plaintiffs' complaint alleges that

21   "Defendants publicly performed and/or caused to be publicly performed" the songs at issue in

22   the Complaint. Dkt. No. 1 ¶ 35. Such a generic assertion against an undifferentiated group leaves

23   Defendants in the dark about who is alleged to have done what. And while a separate assertion

24

does direct an allegation at a single Defendant, assigning ownership of "unauthorized public performance" to "Defendant," that individual or entity is not identified. *Id.* ¶ 30.

Given the vagueness and factual thinness of the Complaint, Plaintiffs have not sufficiently pleaded their claims for copyright infringement. Factors two and three thus weigh against default judgment. Because the second and third *Eitel* factors weigh against default judgment, the Court need not examine the remaining factors.

Therefore, the Court DENIES Plaintiffs' motion. However, Plaintiffs may cure the deficiencies by filing and serving an amended complaint. If Defendants do not timely respond, Plaintiffs may again seek entry of default and then move for entry of default judgment. *See RPM Mortg.*, 2018 WL 1335812, at *5; *Araiza v. BMW of N. Am. LLC*, No. C24-753, 2024 WL 3585132, at *3 (N.D. Cal. July 29, 2024).

*    *    *

Because it is very likely that Plaintiffs will be able to adequately amend their complaint should they choose to do so, the Court will address deficiencies with their requests for injunctive relief, attorney fees, and costs so that Plaintiffs can address these issues if and when they again move for entry of default judgment.

C.    **Request for Injunctive Relief**

The Copyright Act authorizes the Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "For the Court to grant a permanent injunction, a plaintiff must demonstrate that: (1) it has suffered irreparable injury; (2) the remedies available at law are inadequate; (3) a remedy in equity is warranted, considering the hardships imposed on the parties; and (4) a permanent injunction would not be contrary to the public interest." *DP Creations LLC v. Ke Yi Ke Er Shenzhen Toys Co. Ltd.*, No. C24-240, 2024 WL 4681369, at *6 (W.D. Wash. Nov. 5,

2024) (citing *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 n.11 (9th Cir. 2006)). "This test . . . applies to copyright-infringement cases." *LHF Prods. v. Boughton*, 299 F. Supp. 3d 1104, 1116 (D. Nev. 2017) (citing *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 995–96 (9th Cir. 2011)). An injunction "must be narrowly tailored" to remedy only the specific harms shown by a plaintiff, "rather than to enjoin all possible breaches of the law." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004).

Here, Plaintiffs have not satisfied the first two prongs of the test. In their motion for default judgment, Plaintiffs assert that:

> courts have regularly found that a performing rights organization such as BMI suffers irreparable injury and that remedies at law are inadequate where a defendant has committed copyright infringement by publicly performing copyrighted music without a license and there is a substantial likelihood that the infringing conduct will continue.

Dkt. No. 15 at 6. Plaintiffs are not wrong. But the Court cannot presume these elements exist here; Plaintiffs still need to show irreparable injury and demonstrate the inadequacy of legal remedies. *See, e.g.*, *Broad. Music Inc. v. BLK, III LLC*, No. C19-1358, 2020 WL 2395118, at *4–5 (D. Ariz. May 12, 2020). It is not enough for Plaintiffs to point to *other* cases where, as a plaintiff, BMI successfully made these requisite showings on its way to obtaining a permanent injunction. To demonstrate their entitlement to injunctive relief in this case, Plaintiffs must make those showings *here*. *See Flexible Lifeline Sys.*, 654 F.3d at 998 ("[P]resuming irreparable harm in a copyright case is . . . disapproved by[] the Supreme Court.") (citing *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 979–80 (9th Cir. 2011)).

Instead, Plaintiffs rely on findings in other cases to make their argument regarding irreparable harm. Without actually asserting that Plaintiffs in this case have been harmed, Plaintiffs argue that, because other plaintiffs in other cases have suffered irreparable injury in

1  similar circumstances, the Court should presume that Plaintiffs here have suffered the same. *Id.*
2  at 6–7. But the Court cannot make such a presumption. "'[T]here is no presumption of
3  irreparable harm with respect to permanent injunctions' in 'run-of-the-mill copyright litigation.'"
4  *BLK, III*, 2020 WL 2395118, at *4 (quoting *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943,
5  948 (N.D. Cal. 2009), *aff'd* 658 F.3d 1150 (9th Cir. 2011)). "[E]ven in a copyright infringement
6  case, the plaintiff must demonstrate a likelihood of irreparable harm as a prerequisite for
7  injunctive relief, whether preliminary or permanent." *Flexible Lifeline Sys.*, 654 F.3d at 998.

        As was the case in *BLK, III*, Plaintiffs' motion for default judgment in this case "touches upon the issue of irreparable harm in only cursory fashion." *BLK, III*, 2020 WL 2395118, at *4. But where the *BLK, III* court ultimately credited plaintiffs' "conten[tion] that a permanent injunction [was] warranted because Defendants [were] 'continuing to infringe,'" and reviewed evidence indicating as much, Plaintiffs here make no such assertion and provide no such evidence. *Compare id.*, *with* Dkt. No. 15 at 6–7.

        As to the inadequacy of legal remedies, Plaintiffs here presume, but never actually assert, that Defendants are continuing to infringe. *See* Dkt. No. 15 at 6–8; *see also* Dkt. No. 1 ¶ 36 ("Defendants *threaten* to continue committing copyright infringement." (emphasis added)). But the manner of threat is vague and unspecified. The closest Plaintiffs get to alleging ongoing infringement is to argue that they "have also demonstrated that Defendants, despite receiving multiple telephone calls, and cease and desist notices from BMI, *continued* to publicly perform Plaintiffs' copyrighted works without authorization." *Id.* Dkt. No. 15 at 7 (emphasis added). This past-tense assertion is a backward-looking observation, not a prediction. And while it *might* be predictive of Defendants' future behavior upon their receipt of more telephone calls and more cease-and-desist notices, it is not necessarily predictive of Defendants' behavior after a future court order levies against them statutory damages, attorney fees, and costs. Legal remedies are

inadequate where, for example, an infringing defendant "reveal[s] a dogged determination to continue [infringing]," *Apple Inc.*, 673 F. Supp. 2d at 950; or where "infringement . . . is ongoing at [Defendants'] establishments," *BLK, III*, 2020 WL 2395118, at *5. Plaintiffs do not adequately demonstrate this here.

**D.     Request for Attorney Fees and Costs**

   **1.     Propriety of an Award**

Plaintiffs request attorney fees and costs pursuant to 17 U.S.C. § 505, which "allow[s] the recovery of full costs by or against any party" and authorizes the court to "award a reasonable attorney's fee to the prevailing party as part of the costs." *See* Dkt. No. 15 at 8–9. In deciding whether to award fees, "a court . . . must exercise 'equitable discretion' with consideration of a non-exclusive list of factors, 'so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.'" *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242, 1245 (W.D. Wash. 2015) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). "The court might consider (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010).

Assuming that Plaintiffs can amend their complaint and successfully move for default judgment, the factors weigh in favor of an award of fees to Plaintiffs. Plaintiffs' claims are not frivolous because Defendants' default renders them admitted. Plaintiffs' motivation here is to enforce their statutory rights under the Copyright Act. Defendants' position is "deemed objectively unreasonable given [their] failure to advance any factual or legal arguments against Plaintiffs' claims." *Benson Mills, Inc. v. Deng*, No. C21-1467, 2023 WL 3599887, at *4 (W.D.

Wash. May 23, 2023) (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208–09 (2016)). And finally, "there is an express intent of the statute for costs and fees for the infringement such as conducted by Defendant[s]." *Id.*

### 2. Amount of Award

#### a. *Attorney Fees*

Plaintiffs assert that they have incurred "attorneys' fees in the amount of $5,500 and costs of $1,317.56." *Id.* "In calculating the reasonableness of attorney's fees, the Court employs the 'lodestar' method, calculating 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *BWP Media*, 103 F. Supp. 3d at 1249 (first citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), then citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)).

This is impossible here, however, because Plaintiffs have provided an invoice that includes only a single line item: $5,500.00 for "Phase 1 Infringement." Dkt. No. 16-4 at 2. Plaintiffs do not expressly represent that counsel charged a flat fee of $5,500.00 (and the Court will not presume as much), so it is unclear how this number was arrived at. Plaintiffs assert that "[t]his amount represents a reasonable fee in light of the experience of counsel, the nature of the case, and the services provided," but the Court is left in the dark as to all three variables. Dkt. No. 15 at 8.

In *Broadcast Music, Inc. v. Benchley Ventures, Inc.*, a court in this District encountered a flat-fee request in a copyright-infringement case, but the plaintiffs in that case "provide[d] detailed billing records for their counsel's work," and counsel himself represented the exact number of hours he had worked on the case and his hourly rates. 131 F. Supp. 3d 1097, 1106–07 (W.D. Wash. 2015). This data enabled the court to conclude that the requested fees were "more than reasonable, especially as compared to other attorneys' fee awards within [the] district." *Id.*

at 1107. But in another copyright-infringement case brought by BMI in a Ninth Circuit court, the court rejected plaintiffs' flat-fee request for $5,000 in attorney fees because:

> [p]laintiffs ha[d] provided no information that a $5,000 award [was] reasonable given the amount of work necessary, the experience, reputation, and ability of the attorneys, the difficulty of the case, the skill necessary to perform the work, the customary fee in this type of action, the actual services performed, the regular hourly rates of the attorneys involved, awards in similar cases, or any other factors.

*Broadcast Music, Inc. v. Ponderosa Chophouse Enters.*, C13-229, 2013 WL 12113997, at *2 (C.D. Cal. June 17, 2013).[1] Similarly here, Plaintiffs have provided no substantive information about their fee request beyond the amount requested. *See* Dkt. No. 15 at 8–9.

And although Plaintiffs have provided robust authority in support of their position that "Courts routinely award full costs and attorneys' fees to plaintiffs that prevail in copyright infringement actions based on a defendant's unauthorized public performance of copyrighted music" (*see* Dkt. No. 15 at 8), in none of the cases cited did the court rely on a single line item to award fees. *See Broad. Music, Inc. v. Acapulco, Inc.*, No. C22-147, 2024 WL 1181877, at *4 (E.D. Va. Mar. 19, 2024) ("Plaintiffs' counsel attached an affidavit to the memorandum that includes an hourly itemized breakdown of the attorney's fees and costs requested."); *W Chappell Music Corp. v. Steampunk, LLC*, No. C23-639, 2024 WL 2368993, at *3 (W.D. Tex. May 23, 2024) ("[Counsel] attests that ASCAP has been billed a total of $9,255 for 16.3 hours of attorney time."); *Broad. Music, Inc. v. 11 Exchange St. LLC*, No. C19-40136, 2020 WL 7344398, at *4 (D. Mass. Oct. 13, 2020) (calculating lodestar based on counsel's representations that he charged $440 per hour; had been a member of his firm for 38 years, practicing "principally in the field of

---

[1] More specifically, the *Ponderosa Chophouse* court found that plaintiffs had not provided any rationale as to why the court "should depart from [the district's] established schedule" regarding awards of attorney fees upon default judgment. *Ponderosa Chophouse*, 2013 WL 12113997, at *2 (discussing C.D. Cal. R. 55-3).

copyright law"; and had worked on the case for 7.3 hours); *Broadcast Music, Inc. v. Dominick's To Go of Winter Springs LLC*, No. C19-1397, 2020 WL 1931320, at *5 (M.D. Fla. Apr. 6, 2020) (granting fees after reviewing detailed Fee Declaration); *Broad. Music, Inc. v. Opitz*, No. C18-1914, 2018 WL 6615140, at *5 (N.D. Cal. Nov. 19, 2018) (basing fees on attorneys' asserted hourly rates, hours worked, and experience in "intellectual property law"). And the *Broadcast Music, Inc. v. Prana Hospitality, Inc.* opinion that Plaintiffs cite dedicated nearly 1,900 words to its analysis of the plaintiffs' detailed request for attorney fees, and also included a clarifying table. 158 F. Supp. 3d 184, 199–203 (S.D.N.Y. 2016). Thus, Plaintiffs' request for attorney fees is deficient, even by the standard that they suggest applies.

          **b.**    ***Court Costs***

As to costs, Plaintiffs assert that they have incurred $1,317.56 in costs. Dkt. No. 15 at 8. These are invoiced and itemized and include $44.79 in online research fees, $408.00 in court fees, $835.00 in subpoena fees, and $29.77 in FedEx fees. Dkt. No. 16-4 at 1.

The court and FedEx fees are reasonable. *See Rutherford v. McKissack*, No. C09-1693, 2011 WL 3421516, at *7 (W.D. Wash. Aug. 4, 2011) (finding court costs and postage costs reasonable). However, the Court rejects the online-research fees, as these are more appropriately treated as attorney fees, not court costs. *See Jones v. George Fox Univ.*, No. C19-5, 2022 WL 4120783, at *5 (D. Or. Sept. 9, 2022) (citing *Frederick v. City of Portland*, 162 F.R.D. 139, 144 (D. Or. 1995)). As to the "subpoena fees," the Court requires further explanation. "Subpoena fees not issued for testimony at trial are not a cost." *Smith v. Ardew Wood Prods., Ltd.*, No. C07-5641, 2010 WL 9536831, at *2 (W.D. Wash. Feb. 4, 2010). Obviously, in a default case such as this one, there is no trial, and the invoices that purportedly substantiate the "subpoena fees" say nothing about subpoenas. The Court surmises that Plaintiffs' claimed "subpoena fees" refer to something other than subpoenas ad testificandum. But as presented in Plaintiffs' motion and

supporting documentation, the Court cannot be sure. Further, while the document on page 1 of Docket No. 16-4 lists $835.00 in "subpoena fees," the invoices that substantiate those line items only add up to $715.00. Dkt. No. 16-4 at 4–9. The Court could assume the "subpoena fees" requested were misnamed and are actually for service of process as noted on the accompanying invoices. However, the Court is not in the business of making assumptions, especially in light of the discrepancies in costs requested compared to the receipts submitted.

## V.     CONCLUSION

Accordingly, Plaintiffs' Motion for Default Judgment (Dkt. No. 14) is DENIED. It is hereby ORDERED:

(1)     If Plaintiffs intend to file an amended complaint, they shall do so **no later than June 20, 2025.**

(2)     If Plaintiffs do not file an amended complaint by **June 20, 2025,** this case SHALL be DISMISSED WITHOUT PREJUDICE.

(3)     Should Plaintiffs file an amended complaint or a renewed motion for default judgment, Plaintiffs SHALL NOT seek any additional fees for time their counsel spends on supplemental briefing submitted pursuant to this Order. *See* LCR 11(c) (an attorney who "multiplies . . . the proceedings in a case may . . . be required by the court to satisfy personally such excess costs").

Dated this 21st day of May 2025.

Tana Lin
United States District Judge

ORDER ON MOTION FOR DEFAULT JUDGMENT - 18