UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BROADCAST MUSIC, INC., et al.,

Plaintiffs,

v.

QM ENTERTAINMENT, LLC d/b/a
QUARTER MILE BAR & GRILL, and
LESTER TRUMMERT,

Defendants.

CASE NO. 3:24-cv-05981-TL

ORDER ON MOTION FOR
DEFAULT JUDGMENT

This matter is before the Court on Plaintiffs' Motion for Default Judgment. Dkt. No. 34.

Defendants have not appeared or otherwise participated in this case; the Clerk of Court entered

Defendants into default on October 23, 2025. Dkt. No. 30. Having reviewed Plaintiffs' motion

and the relevant record, the Court GRANTS the motion.

## I.    PROCEDURAL BACKGROUND

This is a copyright-infringement case predicated upon the unauthorized public

performance of some 11 copyrighted songs at Defendants' restaurant/bar. *See generally* Dkt.

ORDER ON MOTION FOR DEFAULT JUDGMENT – 1

No. 19 (First Amended Complaint ("FAC")). On November 26, 2024, Plaintiffs filed the first complaint in this case. Dkt. No. 1. On February 9, 2025, Plaintiffs served process on both Defendants. *See* Dkt. No. 10 (Smith Decl.) at 4, 6. Defendants neither appeared nor responded to Plaintiffs' complaint and, on March 11, 2025, Plaintiffs moved for an entry of default against both Defendants. Dkt. No. 11. On March 17, 2025, the Court granted Plaintiffs' motion, entered Defendants into default (Dkt. No. 12), and gave Plaintiffs until June 16, 2025, to move for default judgment (Dkt. No. 13).

On April 9, 2025, Plaintiffs moved for default judgment. Dkt. No. 14. On May 21, 2025, the Court denied the motion for the following reasons: (1) failure to plead facts sufficient for this Court to exercise personal jurisdiction over Defendant Lester Trummert, (Dkt. No. 18 at 6:21–22); (2) failure to satisfy the second and third *Eitel* factors (the merits of Plaintiffs' substantive claims and the sufficiency of the complaint) for an entry of default judgment, (*id.* at 8); (3) failure to show irreparable injury and demonstrate the inadequacy of legal remedies that are required for permanent injunctions (*id.* at 12); (4) failure to elaborate on the breakdown for attorneys' fees to show they were reasonable (*id.* at 15); and (5) failure to elaborate on what Plaintiffs meant by "subpoena fees" (*id.* at 17). In its denial, the Court allowed Plaintiffs to file an amended complaint and, if Defendants again defaulted, file a renewed motion for default judgment. *See* Dkt. No. 18 at 18.

On June 18, 2025, Plaintiffs filed the FAC. Dkt. No. 19. On August 14, 2025, Plaintiffs again served process on both Defendants. *See* Dkt. Nos. 20, 21. As with the original complaint, Defendants neither appeared nor responded to the FAC, and on October 7, 2025, Plaintiffs moved for an entry of default against both Defendants. Dkt. No. 23. On October 23, 2025, the Court granted Plaintiffs' motion, entered Defendants into default (Dkt. No. 30), and gave Plaintiffs until January 21, 2026, to move for default judgment (Dkt. No. 31).

On January 15, 2026, Plaintiffs filed the instant motion for default judgment. Dkt. No. 34.

## II.    FACTUAL BACKGROUND

### A.    The Parties

The lead Plaintiff is Broadcast Music, Inc. ("BMI"), a Delaware corporation with its principal place of business in New York. Dkt. No. 19 ¶ 3. Under the Copyright Act of 1976, BMI is a "performing rights society" that has been "granted the right to license the public performance rights in 22.4 million copyrighted musical compositions . . . ." 17 U.S.C. § 101; Dkt. No. 19 ¶ 3. "The Plaintiffs other than BMI are the owners of the copyrights in the musical compositions, which are the subject of this lawsuit"; they include Cotillion Music, Inc.; Warner-Tamerlane Publishing Corp.; Alley Music Corp.; Trio Music Company; Stone Diamond Music Corp.; Screen Gems-EMI Music, Inc.; EMI Al Gallico Music Corp.; Unichappell Music Inc.; EMI Blackwood Music Inc.; Sprit Music Group Inc.; Sony/ATV Songs LLC; Sea Gayle Music LLC; Mary Bono; Showbilly Music; Lucky Thumb Music; Noah's Little Boat Music; Eldorotto Music Publishing; and Big Gassed Hitties. Dkt. No. 19 ¶¶ 4, 5–22.

There are two Defendants in this case. Defendant QM Entertainment, LLC, is a Washington limited liability company that "operates, maintains and controls an establishment known as Quarter Mile Bar & Grill [in] Yelm, Washington." *Id.* ¶ 23. Defendant Lester Trummert "is an officer of Defendant QM Entertainment, LLC with responsibility for the operation and management of that limited liability company and [Quarter Mile Bar & Grill]." *Id.* ¶ 26. Defendant Trummert is the owner of Quarter Mile Bar and Grill. *Id.* ¶41. As such, he "has the right and ability to supervise the activities of Defendant QM Entertainment, LLC" and "a direct financial interest" in that LLC and Quarter Mile Bar & Grill. *Id.* ¶¶ 28, 29. Defendant Trummert is presently a Washington resident and was a Washington resident at the time of the

alleged infringements, with a mailing address in Yelm, Washington, and a street address in Gig Harbor, Washington. *Id.* ¶ 27.

**B.      The Infringement**

Copyright owners, such as the non-BMI Plaintiffs here, maintain the "exclusive right[]" to authorize public performance of their copyrighted work. 17 U.S.C. § 106(6). As a "performing rights society," Plaintiff BMI facilitates such authorization by "licens[ing] the music of its members"—i.e., the copyright owners—"and collect[ing] royalties whenever that music is performed publicly." *Range Road Music, Inc. v. E. Coast Foods, Inc.*, 668 F.3d 1148, 1151 (9th Cir. 2012) (citing *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1, 4–5 (1979)). The 22.4 million songs for which copyright owners have granted BMI the right to license public performance rights make up the "BMI Repertoire." Dkt. No. 19 ¶ 3.

"BMI routinely sends license agreements to the proprietors of establishments where music is publicly performed, and information explaining the need to obtain permission from copyright owners in order to lawfully publicly perform copyrighted music in their establishment." Dkt. No. 39 (Flynn Decl.) ¶ 2. Here, Plaintiffs allege that Defendants willfully committed copyright infringement by allowing the unauthorized public performance of musical compositions from the BMI Repertoire. Dkt. No. 19 ¶ 32.

Beginning in March 2023, Plaintiff BMI contacted Defendants "over forty (40) times" to "educate Defendants as to their obligations under the Copyright Act with respect to the necessity of purchasing a license for the public performance of musical compositions in the BMI Repertoire." Dkt. No. 19 ¶ 31; *see* Dkt. No. 38 at 55–119 (written correspondence between Plaintiff BMI and Defendants). Plaintiff BMI sent Defendants "Cease and Desist Notices," which provided Defendants with "formal notice that they must immediately cease all use of BMI-licensed music in" Quarter Mile Bar & Grill. Dkt. No. 19 ¶ 31.

Defendants did not cease and desist. On May 28, 2024, Defendants publicly performed at least 11 songs from the BMI Repertoire without having obtained permission to do so. Dkt. No. 19 ¶ 32; *see* Dkt. No. 1-1 (Schedule). These songs included:

- "Beat Goes On a/k/a The Beat Goes On," published by Plaintiff Cotillion Music, Inc., and Plaintiff Mary Bono as Trustee of the Bono Collection Trust;

- "China Grove," published by Plaintiff Warner-Tamerlane Publishing Corp.;

- "Hanky Panky," published by Plaintiff Alley Music Corp. and Plaintiff Trio Music Company;

- "Hello Walls," published by Plaintiff Sony/ATV Songs LLC;

- "I Heard It Through the Grapevine a/k/a Heard It Through the Grapevine," published by Plaintiff Stone Diamond Music Corp.;

- "I'm Your Puppet," published by Plaintiff Screen Gems-EMI Music, Inc.;

- "Neon Moon," published by Plaintiff Showbilly Music;

- "Stand By Your Man," published by Plaintiff EMI Al Gallico Music Corp.;

- "Teenager In Love a/k/a A Teenager in Love," published by Plaintiff Unichappell Music, Inc.;

- "Mama Told Me Not to Come," published by Plaintiff Unichappell Music Inc.; and

- "In Color," published by Plaintiff EMI Blackwood Music Inc., Plaintiff Warner-Tamerlane Publishing Corp., Plaintiff Lucky Thumb Music, Plaintiff Noah's Little Boat Music, Plaintiff Sea Gayle Music LLC, Plaintiff Eldorotto Music Publishing, Plaintiff Big Gassed Hitties, and Plaintiff Spirit Music Group Inc.

Dkt. No. 1-1 at 1–5. On May 28, 2024, a BMI Researcher visited Defendants' establishment and recorded public performances of karaoke performances and musical recordings played between karaoke performances, which together comprised the 11 copyrighted compositions publicly performed at Quarter Mile Bar & Grill. Dkt. No. 19 ¶¶ 37–38. A laptop computer played the songs through Peavey-brand speakers on the karaoke stage. *Id.* ¶ 37. The bartender acted as the

karaoke host deejay and the bar manager acted as the deejay who played songs between karaoke performances. *Id.*

The copyright owners of all 11 songs "complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights Certificates of Registration bearing" registration numbers. Dkt. No. 19 ¶ 35. Plaintiff BMI is the licensor of public performance rights for all 11 songs. *Id.* ¶ 36.

### III.     LEGAL STANDARD

A court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Default judgment is "ordinarily disfavored," because courts prefer to decide "cases on their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (affirming district court's denial of default judgment). When considering whether to exercise discretion in entering default judgments, courts consider a variety of factors, including:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of a plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. "None of the factors is dispositive in itself; instead, [courts] must balance all seven." *Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 884 (S.D. Cal. 2021); *e.g., Bd. of Trs. of San Mateo Hotel Emps. & Rest. Emps. Welfare Fund v. H. Young Enters., Inc.*, No. C08-2619, 2009 WL 1033665, at *4–5 (N.D. Cal. Apr. 13, 2009) (finding second and third *Eitel* factors dispositive when deciding to enter default judgment).

Courts reviewing motions for default judgment must accept the allegations in the complaint as true, except those regarding facts related to the amount of damages. *Geddes v.*

ORDER ON MOTION FOR DEFAULT JUDGMENT – 6

*United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *accord Little v. Edward Wolff & Assocs. LLC*, No. C21-227, 2023 WL 6196863, at *3 (W.D. Wash. Sept. 22, 2023) (quoting *Cripps*, 980 F.2d at 1267). Damages are also limited to what was reasonably pleaded. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

### IV.    DISCUSSION

#### A.    Jurisdiction

As an initial matter, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

##### 1.    Subject-Matter Jurisdiction

The Court has federal-question subject-matter jurisdiction over this matter based on Plaintiffs' claims for copyright infringement. 17 U.S.C. § 501; 28 U.S.C. §§ 1331, 1338.

##### 2.    Personal Jurisdiction

The Court may properly exercise general personal jurisdiction over both Defendant QM Entertainment and Defendant Trummert.

As to Defendant QM Entertainment, "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up). Defendant QM Entertainment is a Washington LLC that maintains the establishment Quarter Mile Bar & Grill in Yelm, Washington. Dkt. No. 19 ¶ 23. Defendant QM Entertainment's incorporation as a Washington LLC, along with its operation of a restaurant in Washington, clearly establishes this Court's

ORDER ON MOTION FOR DEFAULT JUDGMENT – 7

general personal jurisdiction over it. *See Hein v. Taco Bell, Inc.*, 60 Wn. App. 325, 330–31, 803 P.2d 329 (1991).

As to Defendant Trummert, "Every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory." *Pennoyer v. Neff*, 95 U.S. 714, 722 (1877), *overruled on other grounds by Shaffer v. Heitner*, 433 U.S. 186 (1977). One instance of domicile within a state renders a defendant amenable to suit within that state, where the state has provided and employed a reasonable method for apprising a party of the proceedings against them. *See Milliken v. Meyer*, 311 U.S. 457, 464 (1940). Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located. Fed. R. Civ. P. 4(k)(1)(A). Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons. *Daimler*, 571 U.S. at 125. In Washington, residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile. *See In re Lassin's Est.*, 33 Wn.2d 163, 165–66, 204 P.2d 1071 (1949). Here, Defendant Trummert is a resident of Washington and is domiciled in Washington. He was a Washington resident at the time of the alleged infringements, with a street address in Gig Harbor, Washington, and a mailing address in Yelm, Washington. Dkt. No. 19 ¶ 27.

On August 15, 2025, Plaintiff filed Certificates of Service of the FAC to Defendants Trummert (Dkt. No. 20) and QM Entertainment (Dkt. No. 21). Therefore, this Court has personal jurisdiction over both Defendants.

**B.    Default Judgment**

As discussed below, the Court finds that application of the *Eitel* factors to this motion weighs in favor of default judgment. Accordingly, Plaintiffs' motion succeeds. *See Eitel*, 782 F.2d at 1471–72. The Court will examine each *Eitel* factor in turn.

### 1.   The Possibility of Prejudice to the Plaintiffs

The first *Eitel* factor is the possibility of prejudice to the plaintiff. Here, without the entry of default judgment, Plaintiffs will be prejudiced. Plaintiffs have attempted to litigate this case and vindicate their rights under federal law against Defendants. Defendants have failed to appear or participate in this litigation despite having been served. Without entry of default judgment, Plaintiffs face prejudice by not being able to obtain complete relief on their claims against Defendants.

Therefore, this factor weighs in favor of granting default judgment.

### 2.   The Substantive Merits of the Complaint and the Sufficiency of the Complaint

The second and third *Eitel* factors—the substantive merits of the claim and the sufficiency of the complaint—are often analyzed together. *See Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002)). To establish a prima facie case for copyright infringement, a plaintiff "must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Range Road Music*, 668 F.3d at 1153–54 (quoting *Funky Films, Inc. v. Time Warner Ent. Co.*, 462 F.3d 1072, 1076 (9th Cir. 2006)). "The word 'copying' is shorthand for the infringing of any of the copyright owner's exclusive rights, one of which is the right to perform the copyrighted work publicly." *Id.*; *see* 17 U.S.C. § 106(6). To perform a work publicly means to perform it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered. 17 U.S.C. § 101.

Plaintiffs have established the first element of ownership. Plaintiffs allege that the "Plaintiffs other than BMI are the owners of the copyrights in the musical compositions, which

are the subject of this lawsuit." Dkt. No. 19 ¶ 4. Plaintiffs allege further that "BMI has been granted the right to license the public performance rights in 22.4 million copyrighted musical compositions . . . , including those which are alleged herein to have been infringed." *Id.* ¶ 3. The Schedule attached to the original complaint provides further information regarding each claim of infringement. *See* Dkt. No. 1-1. Line 4 of each entry in the Schedule lists the copyright owner. *See id.* Each allegedly infringed song is owned by at least one Plaintiff. *See* supra Section II.B. The Schedule also lists the songs' respective copyright registration numbers and dates of registration. *See* Dkt. No. 1-1.

As to the second element of copying through public performance, Plaintiffs have established that both Defendants are liable, even if Defendant Trummert was not the one who publicly performed the copyrighted works. The Ninth Circuit recognizes three doctrines of copyright liability: direct copyright infringement, contributory copyright infringement, and vicarious copyright infringement. *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Two are applicable here.

### a.   Contributory Copyright Infringement

The FAC sufficiently pleads contributory copyright infringement against both Defendants. One who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be liable as a contributory copyright infringer. *Ellison*, 357 F.3d at 1076 (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). Knowledge for contributory copyright infringement includes both those with actual knowledge and those who have reason to know of direct infringement. *Id.* (citing *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001)).

Here, Defendant Trummert had reason to know of the direct infringement at issue, given the "ten (10) letters, twenty-two (22) email communications, and twenty-seven (27) phone calls from BMI informing him of the copyright concerns and his need for a license. BMI's written communications not only included a 'Cease and Desist' notice but also a letter informing him of the established claims of infringement and offering pre-litigation resolution." Dkt. No. 19 ¶ 41. Although some of these communications were addressed directly to Defendant Trummert, "[t]he letters were addressed to both Quarter Mile Bar & Grill and Lester Trummert." *Id.* ¶ 31. Additionally, Defendant Trummert authorized employees of Quarter Mile Bar & Grill to perform recorded music between karaoke performances and authorized the performance of karaoke at Quarter Mile Bar & Grill while "refusing to obtain a BMI license." *Id.* ¶¶ 40, 42. Defendant QM Entertainment, doing business as Quarter Mile Bar & Grill and "acting through the Bartender and Bar Manager who served as the Karaoke Host and DJs, caused the musical compositions to be publicly performed at the Establishment without a license or permission to do so." *Id.* ¶ 39. Therefore, as pleaded, the FAC alleges that both Defendants had knowledge, and that their conduct caused public performances of the 11 musical compositions at issue in this case, thus establishing a claim for contributory copyright infringement.

**b.      Vicarious Copyright Infringement**

A defendant is vicariously liable for copyright infringement if they enjoy a direct financial benefit from another's infringing activity and has the right and ability to supervise the infringing activity. *Ellison*, 357 F.3d at 1076 (citing *A&M Records*, 239 F.3d at 1022). Financial benefit exists where the availability of infringing material acts as a draw for customers. *Id.* at 1078 (citing *A&M Records*, 239 F.3d at 1023). A draw does not have to be "substantial" to meet the element of a financial benefit sufficient to establish vicarious copyright infringement. *Id.* at 1078–79.

Both Defendants here enjoyed direct financial benefit through the allegedly infringing performances. That Quarter Mile Bar & Grill derives financial benefit from these performances is demonstrated by the establishment's continued advertisement of live music, karaoke, line dancing, and other music-intensive events that bring in customers. Dkt. No. 19 ¶ 43; Dkt. No. 35 at 12. As the owner of the business, Defendant Trummert has a direct financial interest in these unauthorized public performances. Dkt. No. 19 ¶¶ 41–42; Dkt. No. 35 at 8–9. Moreover, both Defendants stood to benefit financially by continuing to ignore BMI's requests for license agreements that would have cost $11,345.20 between March 2023 and June 2025—when the FAC was filed—and an additional annual licensing fee of $3,953.25. Dkt. No. 19 ¶ 45.

Further, both Defendants had the right and ability to supervise the unauthorized public performances. Proprietors of restaurants and other establishments are routinely held liable for copyright infringement that occurs on their premises, even where they do not directly control the content of the music performances. *Broad. Music, Inc. v. Benchley Ventures, Inc.*, 131 F. Supp. 3d 1097, 1103 (W.D. Wash. 2015) (citing *Range Road Music*, 668 F.3d at 1154–55, *Broad. Music, Inc. v. McDade & Sons, Inc.*, 928 F. Supp. 2d 1120, 1133–34 (D. Ariz. 2013), and other cases). As the owner of the business who was responsible for its operation and management, Defendant Trummert was able to direct and control the infringing activity. Dkt. No. 19 ¶¶ 26, 40, 42; Dkt. No. 35 at 9. And Defendant QM Entertainment caused musical compositions to be publicly performed through live musical performances, karaoke events, and performance of recorded music controlled by the business' employees, contractors, or the owner—in this case, through music played by the karaoke host and DJ. Dkt. No. 19 ¶¶ 24, 39. Therefore, both Defendants had the right and ability to supervise the unauthorized performances.

*    *    *

Plaintiffs have sufficiently pleaded meritorious copyright-infringement claims. Therefore, the second and third *Eitel* factors weigh in favor of default judgment.

### 3. The Sum of Money at Stake

The fourth *Eitel* factor considers the sum of money at stake in the case. Pursuant to 17 U.S.C. § 504(c)(1), Plaintiffs seek statutory damages of $3,100 for each of the 11 acts of infringement described in the FAC, for a total statutory damage award of $34,100. Dkt. No. 35 at 9; Dkt. No. 19 at 8. Under the Copyright Act, the maximum statutory damages are $30,000 per violation, but up to $150,000 where a violation is willful. 17 U.S.C. § 504(c)(1) and (c)(2).

"The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Recs. Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (citing *L.A. Westermann Co. v. Dispatch Printing Co.*, 249 U.S. 100, 106–07 (1919)). Here, Plaintiffs are asking for $34,100 in damages, which represents approximately 10 percent of the statutory maximum. This is a reasonable request. *See, e.g.*, *McDade & Sons*, 928 F. Supp. 2d at 1123, 1135 (awarding $39,000 in statutory damages for 13 copyright violations).

Therefore, the sum of money at stake is "relat[ed] to the seriousness of [Defendants'] conduct. *PepsiCo*, 238 F. Supp. 2d at 1176. This factor weighs in favor of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of a dispute concerning material facts. In defaulting, Defendants are deemed to have admitted all well-pleaded factual allegations contained in the complaint. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d, 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)). Since Plaintiffs have supported their claims with ample evidence, and Defendants have made no attempt to challenge the accuracy of the allegations in the FAC, no factual disputes exist that preclude the entry of default judgment.

Therefore, the fifth *Eitel* factor weighs in favor of default judgment.

### 5.     Whether the Entry of Default is Due to Excusable Neglect

The sixth *Eitel* factor addresses whether the entry of default is due to excusable neglect. There is no evidence here to indicate that entry of default was due to excusable neglect. A Summons was electronically issued for each Defendant on November 27, 2024. Dkt. No. 2. On February 9, 2025, Plaintiffs served the summons and complaint directly on Defendant Trummert personally and in his capacity as the registered agent for Defendant QM Entertainment LLC. Dkt. No. 10 at 4, 6. The Clerk entered default against both Defendants on March 17, 2025. Dkt. No. 12. After Plaintiffs filed the FAC with the Court on June 18, 2025, they provided separate Certificates of Service demonstrating service of the FAC directly on Defendant Trummert personally (Dkt. No. 20) and in his capacity as the registered agent for Defendant QM Entertainment LLC (Dkt. No. 21) on August 14, 2025. The Clerk then entered default against Defendants on October 23, 2025. Dkt. No. 30.

Defendants have had ample time and opportunity to respond to Plaintiffs' pleadings and to appear in this case. "There is little possibility of excusable neglect when the plaintiff properly serves the defendant and the defendant is aware of the litigation." *Mesa Underwriters Specialty Ins. Co. v. Hulett*, No. C21-8284, 2022 WL 17218505, at *6 (C.D. Cal. Oct. 26, 2022) (citation omitted); *see also NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016) (sixth *Eitel* factor weighed in favor of default judgment given that defendant "was properly served, yet ignored the deadline to respond to the complaint.").

Therefore, the sixth *Eitel* factor weighs in favor of default judgment.

### 6.    Whether Default Judgment is Appropriate in Light of the Policy Favoring Decisions on the Merits

The seventh *Eitel* factor requires the court to weigh whether default judgment is appropriate in light of the Court's general policy favoring decisions on the merits. The Court maintains a strong policy preference in favor of resolution of Plaintiff's claims on the merits. Whenever it is reasonably possible, courts should decide cases upon their merits. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). But "this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177. Federal Rule of Civil Procedure 55(a) "allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010). Here, Defendants have not appeared and have not participated in this case, let alone defended themselves, in any way.

Therefore, "[s]ince [D]efendant[s] failed to respond to [P]laintiffs['] claims, the seventh *Eitel* factor does not preclude the entry of default judgment against it." *Landstar Ranger*, 725 F. Supp. 2d at 922.

Given that consideration of the *Eitel* factors together supports default judgment, this Court finds default judgment appropriate.

## C.    Damages

The Copyright Act provides for an award of statutory damages for all infringements of a single work for which any two or more infringers are liable jointly and severally. 17 U.S.C. § 504(c)(1); *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1265 (9th Cir. 2021). The Act permits a copyright owner to elect an award of statutory damages in lieu of actual damages and profits. 17 U.S.C. § 504(c)(1); *Desire, LLC*, 986 F.3d at 1264 (9th Cir. 2021). Pursuant to 17 U.S.C. § 504(c)(1), Plaintiffs seek statutory damages of $3,100 for each of the 11 acts of

infringement for the 11 works described in the Complaint, for a total statutory-damages award of $34,100. Dkt. No. 35; Dkt. No. 19 at 8.

"When two or more persons have joined in or contributed to a single infringement of a single copyright, each is jointly and severally liable; [and in such] circumstances, in a single infringement action . . . ." *Desire, LLC*, 986 F.3d at 1263 (quoting 1 M. Nimmer & D. Nimmer, Copyright § 14.04[E][2][d][i]).

The Court finds each Defendant jointly and severally liable for each of the 11 infringement actions. Each Defendant in this matter contributed to each of the acts of infringement and is thus jointly and severally liable. *See supra* Section IV.B.2.

An award of statutory damages of $3,100 for each of the 11 acts of infringement for each of the 11 works described in the Complaint, for a total award of $34,100, is fair in this case. *See supra* Section IV.B.3. Therefore, Plaintiffs' request for statutory damages is GRANTED. The Court AWARDS damages to Plaintiffs of $34,100.

**D.      Request for Injunctive Relief**

The Copyright Act authorizes the Court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). "For the Court to grant a permanent injunction, a plaintiff must demonstrate that: (1) it has suffered irreparable injury; (2) the remedies available at law are inadequate; (3) a remedy in equity is warranted, considering the hardships imposed on the parties; and (4) a permanent injunction would not be contrary to the public interest." *DP Creations LLC v. Ke Yi Ke Er Shenzhen Toys Co. Ltd.*, No. C24-240, 2024 WL 4681369, at *6 (W.D. Wash. Nov. 5, 2024) (citing *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 n.11 (9th Cir. 2006)). "This test . . . applies to copyright-infringement cases." *LHF Prods. v. Boughton*, 299 F. Supp. 3d 1104, 1116 (D. Nev. 2017) (citing *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d

ORDER ON MOTION FOR DEFAULT JUDGMENT – 16

989, 995–96 (9th Cir. 2011)). An injunction "must be narrowly tailored" to remedy only the specific harms shown by a plaintiff, "rather than to enjoin all possible breaches of the law." *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004).

Here, Plaintiffs have shown the Court that equitable relief is warranted. "[A]lthough some injuries may usually be irreparable and thus a likelihood of irreparable injury easily shown, the plaintiff must still make that showing on the facts of his case and cannot rely on a presumption to do it for him." *Flexible Lifeline Sys.*, 654 F.3d at 998. District court analysis of irreparable harm must be grounded in evidence or showings offered by the party arguing for an injunction, and not by unsupported and conclusory statements. *See Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). Even if a party could establish the likelihood of irreparable harm, the record must contain such evidence. *Id.*

Here, Plaintiffs have shown a likelihood of irreparable harm. Plaintiffs argue that Defendants continue to infringe upon their copyrights by "continuing to advertise music intensive events." Dkt. No. 35 at 12. Plaintiffs include a sample of the kinds of events Defendants market to customers. *Id.* Plaintiffs state further that these kinds of events are "certain to include the public performance of copyrighted musical compositions," given that Defendants do not have a BMI license. *Id.* at 13. Although Plaintiffs do not show much in support for why that is, the combination of Defendants' manifested intent to continue performing music, combined with their demonstrated unwillingness to obtain the proper license, leads the Court to believe that there is still a substantial likelihood of continued infringing conduct by Defendants.

Copyright supplies the economic incentive to create and disseminate ideas by protecting the commercial interest of the creator, stimulating creation by protecting its rewards. *See Garcia v. Google, Inc.*, 786 F.3d 733, 744–45 (9th Cir. 2015). This Court is swayed by the interests of the copyright holders that stand to be harmed (and have been harmed) by Defendants' continued

ORDER ON MOTION FOR DEFAULT JUDGMENT – 17

public performances. And Defendants had notice of what they were doing. Before and after investigating Quarter Mile Bar & Grill, Plaintiffs sent letters to Defendants offering to enter into a licensing agreement to authorize public performances of BMI works and advised Defendant Trummert to cease these unauthorized performances without a licensing agreement. Dkt. No. 38 at 56–97; Dkt. No. 19 ¶ 31. Moreover, Plaintiffs lost money and stand to continue to lose money without the Court's intervention. Therefore, Plaintiffs have shown through the evidence in this case that irreparable harm is likely.

The letters, phone calls, emails, and multiple iterations of service of process connected to this case have shown that Plaintiffs have been unable to protect their legal rights to their copyrights, and that they need an injunction to offer additional protection. Defendants are likely to continue to infringe given: (1) the vast number of musical compositions in BMI's repertoire; (2) the advertising and hosting of music-intensive events at Quarter Mile Bar & Grill; and (3) Defendants' choice to ignore efforts by Plaintiffs to vindicate their rights. Defendants' conduct threatens the financial and creative interests of musical creators, their agents, and designated licensors. Therefore, even with an award of damages from this Court, Defendants are likely to continue to infringe Plaintiffs' rights.

The other factors—balance of hardships and the public interest—tilt heavily in favor of granting a permanent injunction. "[T]he balance of hardships issue cannot be accorded significant—if any—weight in determining whether a court should enter a[n] . . . injunction to prevent the use of infringing material in cases where . . . the plaintiff has made a strong showing of likely success on the merits." *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997). Here, the Plaintiffs have succeeded in obtaining default judgment against Defendants, so this factor bears little to no weight. *See, e.g.*, *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072–73 (D. Ariz. 2006) (awarding injunctive relief in

ORDER ON MOTION FOR DEFAULT JUDGMENT – 18

copyright-infringement case where plaintiff had obtained default judgment against defendant).

Here, consideration of the public interest tilts heavily in Plaintiffs' favor. "Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 527 (1994). Given the broad access to creative works that copyright already permits, it is particularly important to adjudicate clear violations. "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Klitzner Indus., Inc. v. H. K. James & Co.*, 535 F. Supp. 1249, 1259–60 (E.D. Pa. 1982). Here, granting the injunction would serve the public interest, not harm it, by protecting artists, and thus access to art.

For the reasons listed above, this Court GRANTS Plaintiffs' request for a permanent injunction against both QM Entertainment and Lester Trummert.

**E.    Request for Attorney Fees and Costs**

Plaintiffs request attorney fees and costs pursuant to 17 U.S.C. § 505, which "allow[s] the recovery of full costs by or against any party" and authorizes the court to "award a reasonable attorney's fee to the prevailing party as part of the costs." *See* Dkt. No. 15 at 8–9. In deciding whether to award fees, "a court . . . must exercise 'equitable discretion' with consideration of a non-exclusive list of factors, 'so long as such factors are faithful to the purposes of the Copyright Act and are applied to prevailing plaintiffs and defendants in an evenhanded manner.'" *BWP Media USA Inc. v. Rich Kids Clothing Co., LLC*, 103 F. Supp. 3d 1242, 1245 (W.D. Wash. 2015) (quoting *Fogerty*, 510 U.S. at 534. "The court might consider (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of

compensation and deterrence." *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614 (9th Cir. 2010) (citing *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir.1994)).

These factors weigh in favor of an award of fees to Plaintiffs. As to the first factor, all of Plaintiffs claims have been adjudicated, and counsel spent a reasonable amount of time on those claims. As to the second factor, Plaintiffs' claims are not frivolous, because Defendants' default renders them admitted. As to the third factor, Plaintiffs' motivation here is to enforce their statutory rights under the Copyright Act. As to the fourth factor, Defendants' position is "deemed objectively unreasonable given [their] failure to advance any factual or legal arguments against Plaintiffs' claims." *Benson Mills, Inc. v. Deng*, No. C21-1467, 2023 WL 3599887, at *4 (W.D. Wash. May 23, 2023) (citing *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 208–09 (2016)). And finally, as to the fifth factor, "there is an express intent of the statute for costs and fees for the infringement such as conducted by Defendant[s]." *Id.*

Plaintiffs assert that they have incurred and are seeking "attorneys' fees in the amount of $9,044.79 and costs of $1,272.77," totaling $10,317.56. Dkt. No. 35 at 14, 15. "In calculating the reasonableness of attorney's fees, the Court employs the 'lodestar' method, calculating 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *BWP Media*, 103 F. Supp. 3d at 1249 (first citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), then citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)).

For attorney fees, Plaintiffs assert that they have incurred $9,044.79 in attorney fees. Dkt. No. 35 at 14. This includes flat rates that counsel charged for phase one ($5,500) and phase two ($3,500) of the case prior to the earlier Motion for Default Judgment, plus $44.79 in online research fees. Dkt. No. 37 ¶ 5, Exh. B at 1. The two attorneys working on the case spent 73 total billable hours on the case—5 hours for Shareholder Loren Podwill and 68 hours for Associate Attorney Antoine Smith, at an average rate of $123.29 per hour. *Id.* at 7. Plaintiffs have included

ORDER ON MOTION FOR DEFAULT JUDGMENT – 20

breakdowns for hours worked and tasks handled for the case. *Id.* at Exh. D:1–3. $123.29 an hour is a reasonable rate, especially compared to other rates that courts have approved in other copyright-infringement cases. *See Curtis*, 33 F. Supp. 3d at 1222 (finding rates ranging from $200–$320 per hour for the attorneys and $150 per hour for the paralegal commensurate with market rates in the Western District of Washington); *see also Mitchell Repair Info. Co., LLC v. Rutchey*, No. C08-500, 2008 WL 11345881, at *1–2 (W.D. Wash. Oct. 21, 2008) (approving an effective rate of $277 per hour for a copyright default judgment reasonable). "Plaintiffs in copyright actions may be awarded attorneys' fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable." *Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1556 (9th Cir. 1989). Here, because the amount Plaintiffs seek in attorney fees is reasonable (in terms of hourly rate charged and hours worked) and because Plaintiffs have been granted default judgment, the Court GRANTS the requested attorney fees of $9,044.79.[1]

As to costs, Plaintiffs assert that they have incurred $1,272.77 in costs. Dkt. No. 35 at 14. These are invoiced and itemized and include $408.00 in court fees, $835.00 in subpoena fees, and $29.77 in FedEx fees. Dkt. No. 37 at 4. Plaintiffs clarified that the $835 in subpoena fees represent costs related to process of service for the Defendants, including multiple attempts. Dkt. No. 37 ¶ 6. The court fees and FedEx fees are reasonable. *See Rutherford v. McKissack*, No. C09-1693, 2011 WL 3421516, at *7 (W.D. Wash. Aug. 4, 2011) (finding court costs and postage costs reasonable); *see also Harvey v. Means*, No. C23-1712, 2024 WL 4144155, at *5 (W.D. Wash. Sept. 11, 2024) (finding $190.90 in legal messenger fees reasonable); *see also*

---

[1] Although the Court accepts Plaintiffs' assertion that the request for fees is "reasonable . . . in light of the experience of counsel, the nature of the case, and the services provided" (Dkt. No. 35 at 14), Plaintiffs are cautioned that in the future, they are expected to provide authority to substantiate such an assertion. *See, e.g., BWP Media USA*, 103 F. Supp. 3d at 1249–50.

ORDER ON MOTION FOR DEFAULT JUDGMENT – 21

*Omni Innovations, LLC v. Impulse Mktg. Grp., Inc.*, No. C06-1469, 2008 WL 11509216, at *5 (W.D. Wash. Jan. 24, 2008) (finding $112.86 in courier service fees reasonable). Additionally, because service of process here was reasonable and covering those costs furthers the purpose of the Copyright Act, the service of process fees are also reasonable. 17 U.S.C. § 505. Therefore, the Courts GRANTS Plaintiffs attorneys' costs of $1,272.77.

### V.    CONCLUSION

Accordingly, it is hereby ORDERED:

(1)    Plaintiffs' Motion for Default Judgment Against Defendants (Dkt. No. 34) is GRANTED.

(2)    Judgment is ENTERED as to all claims.

(3)    Plaintiffs are AWARDED statutory damages totaling $34,100, or $3,100 for each of the 11 acts of infringement.

(4)    Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are hereby permanently ENJOINED AND RESTRAINED from infringing, in any manner, the copyrighted musical compositions licensed by BMI, pursuant to 17 U.S.C. § 502.

(5)    Plaintiffs' counsel is DIRECTED to serve a copy of this Order and Injunction on Defendants' last known address which Plaintiffs used to complete service.

Dated this 10th day of April, 2026.

Tana Lin
United States District Judge

ORDER ON MOTION FOR DEFAULT JUDGMENT – 22